**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LAURENCIO GIL and JORGE CARDOSO,
*on behalf of themselves,*
*FLSA Collective Plaintiffs*
*and the Class,*

        Plaintiffs,

        v.

KDK, LLC d/b/a VIAND CAFE RESTAURANT,
EGS, LLC d/b/a THE VIAND,
HERRICK KONTOGIANNIS,
GEORGE KONTOGIANNIS,
and SOTIRIOS KONSTANTAKOPOULOS,

        Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs, LAURENCIO GIL and JORGE CARDOSO (hereinafter, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby files this class and collective action Complaint against Defendants KDK, LLC d/b/a VIAND CAFE RESTAURANT, EGS, LLC d/b/a THE VIAND (the "Corporate Defendants"), HERRICK

KONTOGIANNIS, GEORGE KONTOGIANNIS, and SOTIRIOS KONSTANTAKOPOULOS ("Individual Defendants") (each individually, "Defendant" or, collectively, "Defendants") and states as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that Plaintiffs, FLSA Collective Plaintiffs and similarly situated individuals are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to time-shaving and illegal wage deductions, (3) liquidated damages, and (4) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), Plaintiffs and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime, (2) unpaid wages due to time-shaving and illegal wage deductions, (3) unpaid spread of hours premium, (4) improper meal credit deductions, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

3.    This is also an action for damages under the Internal Revenue Code, 26 U.S.C. § 7434 for relief, damages, fees and costs in this matter because Defendants willfully filed fraudulent tax information forms with the Internal Revenue Service ("IRS").

4.    Plaintiff JORGE CARDOSO also alleges, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*, that he is entitled to recover from Defendants for Defendants' unlawful discrimination against him on the basis of his disability and for their retaliation against him for asserting his rights under the foregoing statutes.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.   Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

7.   The IRS will be notified of this Complaint as the Internal Revenue Code requires. Specifically, the Internal Revenue Code provides that "[a]ny person bringing an action under [26 U.S.C. § 7434] Subsection (a) shall provide a copy of the complaint to the IRS upon the filing of such complaint with the court."  26 U.S.C. § 7434(d).

**PARTIES**

8.   Plaintiff, LAURENCIO GIL, is a resident of Bronx, New York.

9.   Plaintiff, JORGE CARDOSO, is a resident of Queens, New York.

10. Defendants collectively own and operate two (2) restaurants at the following locations in New York:

(a) 2130 Broadway, New York, New York 10023 (Viand Cafe Broadway); and

(b) 517 Columbus Avenue, New York, New York 10024 (Viand Cafe UWS),

(collectively, the "Restaurants").

11. The Restaurants operate as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose.

(a) The Restaurants are advertised jointly as a common enterprise on Viand Cafe Broadway's Website: https://www.viandnyc.com/. The website contains a popup message stating both restaurant locations are open. *See Exhibit A* .

(b) Viand Cafe UWS's website: https://www.theviand.com/. contains a button onclick link to Viand Café Broadway's webpage. on each of its "Hours & Location" Webpage, "Menus" Webpage, "About" Webpage,  "Gift Cards" Webpage and "Career" Webpage. *See Exhibit B.*

(c) Viand Cafe Broadway marketed Viand Cafe UWS on its Facebook Page: https://www.facebook.com/viandcafe/. For example, in a post dated on April 30, 2018, Viand Cafe Broadway tagged the Viand Cafe UWS (@theviand517, its Facebook account name). *See Exhibit C.*

(d) The Restaurants share the same decor and both serve American food.

(e) Based on Plaintiffs' observations and conversations with other employees, employees are interchangeable amongst the Restaurants' locations.

12. Corporate Defendants:

(a) Corporate Defendant, KDK, LLC d/b/a VIAND CAFE RESTAURANT, is a domestic business corporation organized under the laws of New York, with a principal place of business located at 2130 Broadway, New York, New York 10023, and an address for service of process located at c/o George Magriples, Esq., 21-71 Steinway Street, Astoria, New York 11105. KDK, LLC owns and operates the Viand Cafe Restaurant located at 2130 Broadway, New York, New York 10023.

(b) Corporate Defendant, EGS, LLC d/b/a THE VIAND , is a domestic business corporation organized under the laws of New York, with a principal place of business and an address for service of process located at 517 Columbus Avenue,

New York, New York 10024. EGS, LLC owns and operates The Viand restaurant located at 517 Columbus Avenue, New York, New York 10024.

13. Individual Defendant HERRICK KONTOGIANNIS is a principle of the Corporate Defendants. HERRICK KONTOGIANNIS exercises operational control as it related to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. HERRICK KONTOGIANNIS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, HERRICK KONTOGIANNIS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. HERRICK KONTOGIANNIS exercised functional control over the business and financial operations of all Corporate Defendants. HERRICK KONTOGIANNIS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

14. Individual Defendant GEORGE KONTOGIANNIS is a principle of the Corporate Defendants. GEORGE KONTOGIANNIS exercises operational control as it related to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. GEORGE KONTOGIANNIS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, GEORGE KONTOGIANNIS would have the authority to effect any changes to the quality and terms of employees' employment,

including changing their schedule, compensation, or terminating or hiring such employees. GEORGE KONTOGIANNIS exercised functional control over the business and financial operations of all Corporate Defendants. GEORGE KONTOGIANNIS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

15. Individual Defendant SOTIRIOS KONSTANTAKOPOULOS is a principle of the Corporate Defendants. SOTIRIOS KONSTANTAKOPOULOS exercises operational control as it related to all employees including Plaintiff, FLSA Collective Plaintiffs and the Class. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs and the Class. At all times, SOTIRIOS KONSTANTAKOPOULOS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. SOTIRIOS KONSTANTAKOPOULOS exercised functional control over the business and financial operations of all Corporate Defendants. SOTIRIOS KONSTANTAKOPOULOS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

16. At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

17. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

19. At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them (i) their proper overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek, and (ii) their proper wages due to a policy of time-shaving and illegal wage deductions. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

20. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house and back-of-house employees (including delivery persons, servers, runners, bussers, porters, cooks, line-cooks, food preparers and dishwashers) employed by Defendants on or after the date that is six years before the filing of

the Complaint in this case as defined herein (the "Class Period").

22. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

23. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

24. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of (i) failing to pay overtime premium for hours worked in excess of 40 per workweek, (ii) failing to pay wages for all hours worked due to time-shaving and illegal wage deductions, (iii) failing to obtain proper consent from employees to the meal credit charges (iv) failing to pay spread of hours premium, (v) failing to provide proper wage statements per requirements of the NYLL, and (vi) failing to properly provide wage notices to Class members, at the date of hiring and annually, per requirements of the NYLL.

25. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each

Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

27. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law and applicable state laws;

    b. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class members properly;

    c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

    d. Whether Defendants properly notified Plaintiffs and Class members of their hourly rates and overtime rates;

    e. Whether Defendants paid Plaintiffs and the Class members the overtime premium at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL

    f. Whether Defendants properly compensated Plaintiffs and Class members for

all hours worked;

g.  Whether Defendants operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked due to a policy of time-shaving and illegal wage deductions;

h.  Whether Defendants claimed an invalid meal credit;

i.  Whether Defendants paid the spread of hours premium owed to employees working more than ten (10) hours per day as required by the NYLL.

j.  Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under the NYLL and applicable state laws;

k.  Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of the NYLL and applicable state laws;

l. Whether Defendants failed to properly withhold taxes from the wages of Plaintiffs and the Class; and

m. Whether Defendants provided Plaintiff and the Class with accurate tax statements for each tax year that they worked.

## **STATEMENT OF FACTS**

PLAINTIFF LAURENCIO GIL

30. In or around February 2019, Plaintiff LAURENCIO GIL was employed by Defendants to work as a cook for Defendants' EGS, LLC d/b/a THE VIAND located at 517 Columbus Avenue, New York, New York 10024.  Plaintiff LAURENCIO GIL was employed by Defendants until in or around July 2020.

31. Throughout his employment, Plaintiff LAURENCIO GIL regularly worked 6 days per week for 10 hours per day for a total of 60 hours each week. FLSA Collective Plaintiffs and Class members worked similar hours.

32. Throughout his employment with Defendants, Plaintiff LAURENCIO GIL was compensated at a straight time rate of $17.00 per hour. From the start of Plaintiff LAURENCIO GIL's employment until May 2019, he was paid all in cash on a straight-time basis without any overtime premium. From in or around June 2019 until in or around July 2020, Defendants paid Plaintiff LAURENCIO GIL the first twenty-five to thirty (25-30) hours in check, and the remaining hours in cash on a straight-time basis without any overtime premium. FLSA collective Plaintiffs and Class members also were similarly paid part in cash and part in check on a straight-time basis without any overtime premium.

33. Throughout his employment with Defendants, although Plaintiff LAURENCIO GIL was not given any form of wage statement when he received his cash pay, Defendants automatically deducted an average of $20.00 to $40.00 from Plaintiff LAURENCIO GIL's weekly cash payments and told Plaintiff LAURENCIO GIL that the deduction is for tax purpose. However, he never received any tax forms that covered the cash payments. Similarly, FLSA collective Plaintiffs and Class members also suffered from such wage illegal deductions but never received any tax forms that covered the cash payments.

34. Throughout Plaintiff LAURENCIO GIL's employment with Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff LAURENCIO GIL often was required to work though his meal break on a daily basis. Similarly, FLSA Collective Plaintiffs and Class members were not permitted to take a free and clear meal break.

35. Throughout his employment with Defendants, Plaintiff LAURENCIO GIL often worked over ten (10) hours per day and was not paid any spread of hours premium. Similarly, Class members were not paid any spread of hours premium when the beginning and end time of their workday exceeded ten (10) hours.

PLAINTIFF JORGE CARDOSO

36. In or around January 2018, Plaintiff JORGE CARDOSO was hired by Defendants to work as a cook for Defendants' EGS, LLC d/b/a THE VIAND located at 517 Columbus Avenue, New York, New York 10024.  Plaintiff JORGE CARDOSO was employed by Defendants until in or around January 2020.

37. Throughout his employment with Defendants, Plaintiff JORGE CARDOSO regularly worked six (6) days per week, from 3:00p.m. until 12:00a.m., for a total of fifty-four (54) hours each week. Once a month, Plaintiff JORGE CARDOSO was required to work from around 1:30p.m. until 12:00a.m. FLSA Collective Plaintiffs and Class members worked similar hours.

38. Throughout his employment with Defendants, Plaintiff JORGE CARDOSO was compensated at a straight time rate of $16.00 per hour. Defendants paid Plaintiff JORGE CARDOSO the first forty (40) hours in check, and the remaining hours in cash at a straight time rate. Plaintiff JORGE CARDOSO was not given any form of wage statement when he received his cash pay. FLSA collective Plaintiffs and Class members also were similarly paid part in cash and part in check.

39. Throughout Plaintiff JORGE CARDOSO's employment, he also suffered like Plaintiff Gil from Defendants automatically deducting an average of $20.00 to $50.00 from his weekly cash payments. He was never informed they were for tax withholdings nor did he receive any tax forms that covered his cash wages.

40. Throughout his employment with Defendants, Plaintiff JORGE CARDOSO regularly worked over forty (40) hours per week, however, he was not compensated his overtime premium for hours worked over forty (40), as Defendants paid him on a straight time basis. Similarly, FLSA collective Plaintiffs and Class members also worked similar hours that regularly exceeded forty (40) hours over week and were similarly paid at a straight time rate for their overtime hours.

41. Throughout Plaintiff JORGE CARDOSO's employment with Defendants, Defendants had a policy of automatically deducting thirty (30) minutes each workday for a meal break. However, Plaintiff JORGE CARDOSO often was required to work though his lunch break on a daily basis. Similarly, FLSA Collective Plaintiffs and Class members were not permitted to take a free and clear meal break.

42. Throughout his employment with Defendants, Plaintiff JORGE CARDOSO often worked over ten (10) hours per day and was not paid any spread of hours premium. Similarly, Class members were not paid any spread of hours premium when the beginning and end time of their workday exceeded (10) hours.

43. In or about December 2019, Plaintiff JORGE CARDOSO had a surgery. Due to the surgery, he could only work three days a week. However, Defendants refused to allow Plaintiff JORGE CARDOSO to work part-time and fired Plaintiff JORGE CARDOSO after he told them of his medical condition. Defendants violated the NYC and NYS Human Rights Law when they refused to accommodate Plaintiff Cardoso when he was disabled and instead retaliated against him for requesting an accommodation by firing him.

44. Throughout Plaintiffs' employment with Defendants, Defendants deducted $50 per week from their pay as a meal credit, well above what was legally permissible. On most days Plaintiffs did not eat the meal that Defendants provided. Moreover, Plaintiffs often were not

provided with a meal break yet still had the meal credit deducted. Notwithstanding the foregoing, Defendants did not even satisfy the regulatory meal credit requirements because Defendants did not provide at least one item from each food group. The meals regularly failed to contain either protein, grains or potatoes, or fruits or vegetables, or a proper beverage, and were leftovers that were inedible. Plaintiffs and other employees were enrolled in Defendants' meal credits without their consent nor without any notice. Class members were similarly deducted $50 per week for a meal credit without their consent and were not provided free and clear breaks for meals and meals did not contain an item from each food category.

45. During Plaintiffs' employment with Defendants, they were required to sign fake timesheets that do not reflect their actual working hours. Specifically, they were required to sign blank timesheets and then Defendants could write down any number of hours without Plaintiffs' consent. Similarly, FLSA Collective Plaintiffs and Class members were also required to sign such fake timesheets that do not reflect their actual working hours.

46. Defendants failed to properly withhold Plaintiffs' and Class members' wages for tax purposes.

47. Defendants further failed to provide Plaintiffs and Class members with an accurate W-2 tax statement for each tax year during which Plaintiffs worked.

48. At no time during the relevant periods did Defendants provide Plaintiff or Class members with proper wage statements as required by the NYLL. Plaintiffs and Class members received fraudulent wage statements that reflected only part of their hours, and not actual hours worked.

49. At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wages notices, at the beginning of employment and annually thereafter as required by the NYLL.

50. Defendants knowingly and willfully operated their business with a policy of not paying for all hours worked, and the proper overtime rate thereof for all hours worked to Plaintiffs, FLSA Collective Plaintiffs and Class members in violation of the FLSA and NYLL.

51. Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime premium for all hours worked to Plaintiffs and Class members, in violation of the FLSA and the NYLL.

52. Defendants knowingly and willfully operated their business with a policy of not paying spread-of-hours premium to Plaintiffs and Class members, in violation of the NYLL.

53. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

54. Plaintiffs realleges Paragraphs 1 through 53 of this Class and Collective Action Complaint as fully set forth herein.

55. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

56. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs

within the meaning of the FLSA.

57. At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

58. At all relevant times, Defendants had a policy and practice of time-shaving that failed to pay Plaintiffs and FLSA Collective Plaintiffs for all hours worked.

59. Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs overtime compensation in the lawful amount for hours worked in excess of the maximum hours provided for in the FLSA.

60. Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages in the lawful amount for all hours worked due to a policy of illegal wage deductions.

61. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

62. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

63. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

64. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant

to the FLSA.

65. Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and unpaid overtime, plus an equal amount as liquidated damages.

66. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

67. Plaintiffs reallege Paragraphs 1 through 66 of this Class and Collective Action Complaint as if fully set forth herein.

68. At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the NYLL, §§ 2 and 651.

69. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them wages in the lawful amount for all hours worked due to a policy of time-shaving and illegal wage deductions.

70. Defendants willfully violated the rights of Plaintiffs and Class members by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

71. Defendants failed to properly notify employees of their overtime rate, in direct violation of the NYLL.

72. Plaintiffs and Class members regularly worked days that exceeded ten (10) hours per day. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay spread of hours premium to Plaintiffs and Class members for each day their workday exceeded ten (10)

hours.

73. Defendants willfully violated Plaintiffs and Class members' rights by enrolling them in a meal credit program without proper consent or notice, or satisfying the notational prerequisites.

74. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

75. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL.

76. Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages due to time-shaving and illegal wage deductions, unpaid overtime, unpaid spread of hours premium, meal credit deductions, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

### CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

### UNDER 26 U.S.C. § 7434(a)

77. Plaintiffs reallege and reaver Paragraphs 1 through 76 of this class action Complaint as if fully set forth herein.

78.  By failing to provide Plaintiffs and the Collective Action with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants, and failing to properly record, account for, and report to the IRS all monies paid to Plaintiffs and the Class as compensation for all of the work Plaintiffs and the Class performed during the course of their

employment with Defendants, and failing to withhold amounts listed on W-2 forms as monies withheld, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

79.    Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

## COUNT IV

## DISCRIMINATION AND RETALIATION UNDER THE NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292 *et seq.*)**
**(brought on Plaintiff JORGE CARDOSO's behalf only)**

80. Plaintiff JORGE CARDOSO realleges and reavers Paragraphs 1 through 79 of this Class and Collective Action Complaint as if fully set forth herein.

81. The New York State Executive Law § 296(1)(a) provides that, "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

82. Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff JORGE CARDOSO on the basis of his disability. Defendants knew that Plaintiff JORGE CARDOSO had surgery and could only work three days per week as an employee for Defendants. Nevertheless, Defendants refused to allow Plaintiff JORGE CARDOSO to work part-time, did not even consider any accommodations and they fired Plaintiff JORGE CARDOSO after

he told them of his medical condition in retaliation for his request for an accommodation. Such retaliation is prohibited by the New York State Human Rights Law, which provides that it shall be an unlawful employment practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article." New York State Executive Law § 296(7).

83. Plaintiff JORGE CARDOSO seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## COUNT V

## DISCRIMINATION AND RETALIATION UNDER THE NEW YORK CITY HUMAN RIGHTS LAW

### (N.Y.C. Admin. Code § 8-101 *et seq*)
### (brought on Plaintiff JORGE CARDOSO's behalf only)

84. Plaintiff JORGE CARDOSO realleges and reavers Paragraphs 1 through 83 this Class and Collective Action Complaint as if fully set forth herein.

85. The New York City Administrative Code §8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

86. Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff JORGE CARDOSO on the basis of his disability. Defendants knew that Plaintiff JORGE CARDOSO had surgery and could only work three days per week as an employee for Defendants. Nevertheless, Defendants refused to allow Plaintiff JORGE CARDOSO to work part-time, did not even consider any accommodations and they fired Plaintiff JORGE CARDOSO after he told them of his medical condition in retaliation for his request for an accommodation.

21

87. Plaintiff JORGE CARDOSO seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid overtime compensation due under the FLSA and the NYLL;

d.  An award of unpaid spread of hours premium due under the NYLL;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and spread of hours premium pursuant to the NYLL;

g.  An award of statutory penalties, prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

i.  Designation of this action as a class action pursuant to F.R.C.P. 23;

j.   Designation of Plaintiffs as Representatives of the Class;

k.   Statutory damages of $10,000.00 for each Plaintiff and each Class member for fraudulent filings made on their behalf by the Defendants;

l.   An award of all applicable damages under the NYSHRL and the NYCHRL;

m.   Costs attributable to resolving deficiencies;

n.   Damages resulting from the additional tax debt and additional time and expenses associated with any necessary correction;

o.   That Defendants be ordered to take all the necessary steps to correct the information returns identified above; and

p.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: April 20, 2021                     Respectfully submitted,

By:   */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*